UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
SHAWN WOODWARD,                                          :
                                                         :          **OPINION AND ORDER**
                      Plaintiff,       :
                                                         :          12 CV. 8671 (ER)
        - against -                             :
                                                         :
CORRECTIONAL OFFICER PEREZ, CORRECTIONAL                 :
LIEUTENANT JOHN DOE, CORRECTIONAL                        :
SUPERINTENDENT OF DOWNSTATE                              :
CORRECTIONAL FACILITY PEREZ, and DEPUTY                  :
COMMISSIONER OF CORRECTIONAL SERVICES                    :
JOSEPH F. BELLNIER,                                      :
                                                         :
                      Defendants.      :
---------------------------------------------------------------------x

Ramos, D.J.:

    *Pro se* plaintiff Shawn Woodward ("Plaintiff" or "Woodward") brings this suit pursuant to 42 U.S.C. § 1983. Woodward alleges that on March 14, 2012, Correctional Officer Perez, Correctional Lieutenant John Doe,[1] Correctional Superintendent of Downstate Correctional Facility Perez, and Deputy Commissioner of Correctional Services Joseph F. Bellnier

---

[1] Correctional Lieutenant John Doe has yet to be served. On January 8, 2013, the Court entered an order of service in accordance with *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), directing the New York State Attorney General to ascertain the identity of Correctional Lieutenant Doe and the address at which he may be served. Doc. 10. The Court ordered that within thirty days of receiving this information, "Plaintiff must file an amended complaint identifying Correctional Lieutenant 'John Doe.'" *Id.* By letter dated February 14, 2013, the Office of the Attorney General informed the Court that the "only Lieutenant on duty at the facility was Lieutenant Kevin Coffey, who was the facility watch commander." February 14, 2013 Letter of Richard W. Brewster. Despite this identifying information for Correctional Lieutenant John Doe, Plaintiff did not file an amended complaint.

Because Plaintiff's claims against Lieutenant Doe suffer from the same deficiencies as against the other defendants, the Court will treat the instant motion as if it were brought on behalf of all defendants. *Cf. Hamilton v. Broomfield*, No. 95 Civ. 3241 (MBM), 1998 WL 17697, at *1n.1 (S.D.N.Y. Jan. 20, 1998) (dismissing claims against unserved defendants because they were identical to claims against defendants who filed the motion to dismiss); *Johnson v. New York City*, No. 12 Civ. 4379 (KBF), 2013 WL 950870, at *3 (S.D.N.Y. Mar. 7, 2013) ("As the same conviction underlies plaintiff's claims against defendant Thomas Woods (who has not yet been served in this action), the Court dismisses the Complaint with respect to Woods *sua sponte*."); *Virtual Dates, Inc. v. Afternic.com, Inc.*, No. 01 Civ. 4023 (LAK), 2001 WL 1646451, at *2 (S.D.N.Y. Dec. 20, 2001) ("Although Unodotcom evidently has not been served and did not join in this motion, this order dismisses as to it on the same grounds, as precisely the same points control the claims against it. The Clerk shall close the case.").

(collectively, "Defendants") violated his constitutional rights during his incarceration at Downstate Correctional Facility in Fishkill, New York ("Downstate").[2] Plaintiff claims that Defendants substantially burdened the exercise of his Muslim faith under both the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by forcing him to shower in the presence of a female officer and another inmate identified as a "known homosexual."[3] Pending before the Court is Defendants' motion to dismiss the Complaint. Doc. 28. For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

I. **Factual Background**[4]

On the afternoon of March 14, 2012, Woodward, a Muslim male inmate, was returned to Downstate Correctional Facility from a court visit. Compl. at 4-5. After Plaintiff was processed, Correctional Officer Perez ("Officer Perez") subjected him to a strip search. *Id.* at 4. Woodward was then told to walk naked to the shower and to use a delousing treatment on his private parts, under his arms, and on the top of his head. *Id.* There were approximately eight people in the shower area, including a "known homosexual." *Id.* Plaintiff was able to identify this inmate as homosexual "due to, inter alia, him being in the same [facility], . . . going to Court on [an earlier

---

[2] Woodward is no longer incarcerated at Downstate. In October 2013, Woodward was transferred to the Southport Correctional Facility. *See* October 21, 2013 Letter of Shawn Woodward (Doc. 33). As of July 2014, Plaintiff was an inmate at Elmira Correctional Facility. *See* July 21, 2014 Letter of Shawn Woodward (Doc. 38).

[3] Plaintiff originally brought a claim under the Eighth Amendment, alleging that showering in the vicinity of the female guard and the known homosexual was cruel and unusual punishment. Plaintiff has since voluntarily withdrawn this claim. Pl. Opp. Mem. L. 19.

[4] For purposes of the instant motion, the Court assumes the allegations in Plaintiff's Complaint and opposition to the motion to dismiss to be true and relies exclusively on the information contained therein. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (instructing that a "district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

date] with plaintiff, having the same judge as plaintiff and arriving on Rikers Island on the sameday [*sic*] as plaintiff." *Id.*

Woodward alleges that a female correctional officer was also present at that time and saw him completely nude. Pl. Opp. Mem. L. 7. Woodward complained to Officer Perez that it was against his Muslim faith to be exposed in public while a female was "walking around," and other inmates including the homosexual were naked around him. Compl. at 4. After Officer Perez dismissed Woodward's objection, Woodward asked to speak with Correctional Lieutenant John Doe ("Lieutenant Doe"). *Id.* at 5-A. Officer Perez declined this request, so Plaintiff called out to Lieutenant Doe, who then came over to the shower where Plaintiff was concealing himself with a towel. *Id.* Woodward described his concerns to no avail: Lieutenant Doe "told plaintiff that if he didn't get into the shower that he would go to the box. Thereafter plaintiff got into the shower naked and expose[d] to the eyes of other inmates." *Id.*[5]

There is no allegation that the defendants other than Officer Perez and Lieutenant Doe were present in the shower area that day. Correctional Superintendent Perez ("Superintendent Perez") was named in the Complaint by virtue of her role as Lieutenant Doe and Officer Perez's supervisor. *Id.* Plaintiff sued Deputy Commissioner of Correctional Services Joseph Bellnier ("Deputy Commissioner Bellnier") because Bellnier refused to change the practices at Downstate despite Plaintiff's complaint to the Commissioner of the Department of Correctional and Community Services. *Id.*

Plaintiff seeks two forms of relief. First, he requests "an injunction ordering [the New York State Department of Corrections and Community Supervision] to provide shower curtains .

---

[5] Woodward further acknowledges that he "was not forced to be touched by a female staff or searched by her or forced to come in contact with any other inmate." Pl. Opp. Mem. L. 18.

. . which will cover at-least the private parts of the body." *Id.* at 7.  Second, he seeks monetary damages in the amount of $7,500.  *Id.*

## II. Discussion

### A. 12(b)(6) Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  However, the court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'"  Id. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question on a Rule 12(b)(6) motion "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir.1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is

4

to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

The same standard applies to motions to dismiss *pro se* complaints. *See Zapolski v. Fed. Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011). However, the Court remains obligated to construe a *pro se* complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). In order to survive a motion to dismiss, a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 566 U.S. at 678. A complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted); *see also Triestman*, 470 F.3d at 477 ("[P]ro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

### B. First Amendment

The First Amendment guarantees the right to the free exercise of religion. Convicted felons do not relinquish this right upon incarceration. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." (internal citations omitted)); *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free

5

Exercise Clause." (internal citation omitted)). It is well-accepted, however, that a prisoner's right to exercise his religion involves considerations that do not apply to persons outside of the penal system. Specifically, the prisoner's right is "not absolute or unbridled, and is subject to valid penological concerns, including those relating to institutional security." *Johnson v. Guiffere*, No. 9:04-CV-57, 2007 WL 3046703, at *4 (N.D.N.Y. Oct. 17, 2007); *see also Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) ("A prisoner's right to practice his religion is . . . not absolute.").

"It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a 'prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.'" *Holland v. Goord*, --- F.3d ----, 2014 WL 3360615, at *4 (2d Cir. July 10, 2014) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006)).[6] However, the Court will analyze the free exercise claim under this standard because it finds that Woodward has satisfied this threshold step.[7] Defendants would "then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Salahuddin*, 467 F.3d at 275. It would be Woodward's ultimate burden to demonstrate that Defendants' penological concerns were irrational. *Id.*

Woodward argues that showering in the presence of the female guard and the homosexual inmate infringed on his First Amendment right to the free exercise of his Muslim

---

[6] In *Holland*, the Second Circuit noted the appellant's challenge to the "continued viability of the 'substantial burden' test in light of the Supreme Court's statement in *Employment Division v. Smith* that application of the test 'embroils courts in the unacceptable business of evaluating the relative merits of differing religious claims.'" 2014 WL 3360615, at *4 (quoting *Ford*, 352 F.3d at 592 (quoting *Emp't Div. v. Smith*, 494 U.S. 872, 887 (1990))).

[7] *Cf. Holland*, 2014 WL 3360615, at *4 (analyzing First Amendment claim with the substantial burden requirement because "even assuming the continued vitality of [this requirement], our precedent squarely dictates that Holland's religious exercise was unconstitutionally burdened . . . .").

religion.[8]  To assess a free exercise claim, the Court must evaluate:  (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective.  *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988); *see also Turner v. Safley*, 482 U.S. 78, 89-91 (1987).  The Court assumes that Woodward is a sincere believer in the tenets of Islam, and that male nudity in the presence of women is prohibited in the Islamic faith.  *See Jean-Laurent v. Lawrence*, No. Civ. 1502 (JPO) (SN), 2013 WL 1129813, at *8 (S.D.N.Y. Mar. 19, 2013) (noting that the "taboo in the Islamic faith" concerning male nudity in the presence of women is well known and that the court would not question the plaintiff's allegation that being forced to stand in his underwear similarly infringed upon his freedom of religion); *see also McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004) (noting the unacceptable practice of passing judgment on the "centrality of different religious practices" (internal quotation marks and citations omitted)).  The Court's analysis of the free exercise claim will therefore focus on the alleged infringement upon Woodward's beliefs and whether any legitimate objective was furthered by the presence of the female guard in the shower area.

     A substantial burden on an individual's religious beliefs exists "where the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (quoting *Thomas v. Review Bd. of the Ind. Emp. Sec. Div.*, 450 U.S. 707, 718, 101 S. Ct. 1425, 1432 (1981)).  "Significantly, the plaintiff's burden in "demonstrating substantial burden is 'not a particularly onerous task.'"  *Fifth Ave. Presbyterian Church v. City of New York*, No. 01 Civ. 11493 (LMM), 2004 WL 2471406, at *3 (S.D.N.Y.

---

[8] Though Plaintiff does not distinguish the issues presented by the female guard and the homosexual inmate, the Court will consider them separately.

Oct. 29, 2004) (quoting *McEachin*, 357 F.3d at 202). However, "[t]his Court has explained that a 'mere inconvenience' is insufficient to establish a substantial burden." *Salvatierra v. Connolly*, No. 09 Civ. 3722 (SHS) (DF), 2010 WL 5480756, at *12 (S.D.N.Y. Sept. 1, 2010), *adopted by*, 2011 WL 9398, at *1 (S.D.N.Y. Jan. 3, 2011) (quoting *Pugh*, 571 F. Supp. 2d 477, 505 (S.D.N.Y. 2008) (internal quotation marks and citation omitted)).

According to Woodward, "[b]eing covered or shielded when bathing outside the presence of one's wife is not only central to plaintiff's . . . religious doctrine, but is one of a fundamental principle believed by all sects in orthodox Islaam." Pl. Opp. Mem. L. 17-18. Plaintiff further notes that, "[j]ust because [he] was not forced to be touched by a female staff or searched by her or forced to come in contact with any other inmate does not decrease the substantial burden on plaintiff's religious exercise." *Id.* at 18.

Defendants principally argue that Plaintiff fails to state a claim under the First Amendment because Southern District courts have held that strip searches do not violate the free exercise rights of Muslim inmates. Defs. Mem. L. 6 (citing *Shabazz v. Pico*, 994 F. Supp. 460, 473 (S.D.N.Y. 1998), *vacated in part on other grounds,* 205 F.3d 1324 (2d Cir. 2000)). Defendants rely on *Shabazz*, where the court dismissed on summary judgment a Muslim inmate's First Amendment challenge to a strip frisk policy, for the principle that it is not unreasonable to require inmates to remove their clothing to permit a visual inspection of the naked body. Defendants also cite to *Smith v. Russell*, No. 9:04cv1136, 2007 WL 274756, at *1 (N.D.N.Y. Jan. 29, 2007), where the court rejected on summary judgment a Muslim inmate's challenge to a metal detector search in the presence of a female corrections officer. Defs. Mem. L. 6. There, the plaintiff "was never naked in front of [the female officer], and his genitals were never exposed in her presence or in the presence of any officers during the search." *Smith*, 2007

WL 274756, at *1.  *Smith* and *Shabazz* are inapposite, however, because those cases were decided at the summary judgment phase and because neither of those cases involved the forced nudity of a Muslim inmate in the presence of a female officer.  Thus, neither can stand for the proposition that plaintiff's claims here are precluded as a matter of law.

"At this juncture (on a motion to dismiss), the Court only reviews the pleadings and takes factual allegations at their word."  *Bikur Cholim, Inc. v. Vill of Suffern*, 664 F. Supp. 2d 267, 276 (S.D.N.Y. 2009).  Indeed, as the court in *Bikur Cholim* noted, whether the defendants' actions support the plaintiff's contention that the enforcement of a challenged policy would in fact create a substantial burden on the plaintiff's religious exercise "is not a question to be answered on a rule 12(b) motion to dismiss."  *Id.*  On a motion to dismiss, the court's inquiry on substantial burden "turns on whether [being covered outside the presence of one's wife] 'is considered central or important to [Plaintiff's] practice of Islam.'"  *Covington v. Mountries*, No. 13-CV-343 VEC, 2014 WL 2095159, at *4 (S.D.N.Y. May 20, 2014) (quoting *Ford*, 352 F.3d at 593-54).  Based on Plaintiff's contention that showering in the presence of a female guard violated a central tenet of his religion, the Court finds that Woodward has met the "not . . . particularly onerous task" of establishing a substantial burden at the motion to dismiss stage.[9]

The Court reaches the same conclusion with respect to Woodward's allegation regarding the presence of the homosexual inmate.  Plaintiff claims that "[t]he unlawfulness of being nude outside of ones [*sic*] wife is a general one of prohibitedness in the [M]uslim religion that applies to being nude in the presence of the same sex . . . ."  Pl. Opp. Mem. L. 17.  Woodward further

---

[9] *See also Covington*, 2014 WL 2095159, at *4 ("Applying [the substantial burden] test is not always easily accomplished on a motion to dismiss, given that 'the substantial burden test requires courts to distinguish important from unimportant religious beliefs.'  'Always present is the danger that courts will make conclusory judgments about the unimportance of the religious practice to the adherent rather than confront the often more difficult inquiries into sincerity, religiosity and the sufficiency of the penological interest asserted to justify the burden.'" (quoting *Ford*, 352 F.3d at 593)).

alleges that being naked in the presence of the homosexual inmate satisfies the burden of establishing that he was pressured to commit an act forbidden by his religion. *Id.* Defendants look to *Livingston v. Griffin*, No. 9:04-cv-00607-JKS, 2007 WL 1500382, at *15 (N.D.N.Y. May 21, 2007), for the argument that a court in this Circuit has held that it is not a substantial burden on an individual inmate's religious beliefs to be near another prisoner perceived as homosexual. Defs. Mem. L. 6.[10] In *Livingston*, the court rejected on summary judgment the First Amendment claim of a Muslim prisoner who refused to be shackled to, or seated next to, an inmate he described as transsexual or homosexual. 2007 WL 1500382, at *16. The court found that the plaintiff's discomfort and stress did not amount to a substantial burden, but instead were "so peripheral to Plaintiff's religion that the burden is constitutionally *de minimis*." *Id.* at *16 (citing *Ford*, 352 F.3d at 593)).

Defendants' reliance on *Livingston* fails for the same reasons that their reliance on *Smith* and *Shabazz* fails. *Livingston* was decided at summary judgment and does not involve the forced nudity of a Muslim inmate in the presence of a homosexual. Because Plaintiff has pleaded that being nude outside the presence of one's wife is a general prohibition in the Muslim faith—and has specified that this prohibition applies to nudity in the presence of members of the same sex— the Court finds that Woodward has also met the substantial burden standard with respect to the presence of the homosexual inmate.[11]

---

[10] Defendants mistakenly claim *Livingston* to be a decision from this Court.

[11] To be sure, courts have routinely denied free exercise claims involving allegations similar to those pleaded by Woodward. *See, e.g.*, *Kent v. Johnson*, Civ. A. No. 84-CV-71307-DT, 1990 WL 507413, at *6 (E.D. Mich. Aug. 3, 1990) (determining on summary judgment that female guards' observation of Muslim male prisoner in showers on only three occasions during a two-and-a-half year period to be a "sparse number of viewings [that] is *de minimis* and do not constitute any cause of action under the law"); *Johnson v. Pennsylvania Bureau of Corr.*, 661 F. Supp. 425, 429, 438 (W.D. Pa. 1987) (granting motion for directed verdict where plaintiff's allegation that female guards observed plaintiff using the toilet in his cell at least ten, and perhaps more than 100, times was found to be insufficient under the First Amendment); *see also Sam'I v. Mintzes*, 554 F. Supp. 416 (E.D. Mich. 1983) (granting

Accordingly, Plaintiff's Complaint sufficiently states a First Amendment violation to survive a motion to dismiss.[12]

### C. RLUIPA

RLUIPA offers similar protections to prisoners as the Free Exercise Clause but "heightens the standard for both plaintiffs and defendants." *Graham v. Mahmood*, No. 05 Civ. 10071 (NRB), 2008 WL 1849167, at *13 (S.D.N.Y. Apr. 22, 2008).[13] "RLUIPA protects inmates by providing that a government shall not 'impose a substantial burden' on the 'religious exercise' of inmates in certain institutions unless the government shows that the burden furthers a compelling interest by the least restrictive means." *Salahuddin*, 467 F.3d at 273 (quoting 42 U.S.C. § 2000cc-1(a)); *see also Holland*, 2014 WL 3360615, at *7. "Only if a plaintiff shows that his religious exercise has been substantially burdened, do the defendants need to show something more than a rational relationship between the policy at issue and a governmental interest." *Graham*, 2008 WL 1849167, at *13 (internal quotation marks omitted).

For the required showing of a substantial burden under RLUIPA, Woodward must demonstrate that the government's action pressured him to commit an act forbidden by his religion or prevented him from engaging in conduct or having a religious experience mandated by his faith. *See Muhammad v. City of New York Dep't of Corr.*, 904 F. Supp. 161, 188 (S.D.N.Y. 1995). Additionally, "this interference must be more than an inconvenience; the

---

summary judgment on free exercise claim involving female guard's pat-down search of Muslim male prisoner); *Jones v. Shabazz*, Civ. No. H-06-119, 2007 WL 2873042, at *16 (S.D. Tex. Sept. 28, 2007) (dismissing on summary judgment a Muslim inmate's claim that "routinely strip-searching him in the presence of people, including female officers" violated his First Amendment rights). However, none of the above cases were decided at the motion to dismiss stage or are binding on this Court.

[12] *Cf. Covington*, 2014 WL 2095159, at *5.

[13] "RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Holland*, 2014 WL 3360615, at *7. Accordingly, Plaintiff can recover only injunctive relief in connection with the RLUIPA claim.

burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Davidson v. Davis*, No. 92 Civ. 4040 (SWK), 1995 WL 60732, at *5 (S.D.N.Y. Feb. 14, 1995) (internal quotation marks and citation omitted).

Defendants' principal argument with regard to RLUIPA is that this case is "highly comparable" to the types of cases in which courts do not find a substantial burden. Defs. Mem. L. 13 (citing *Graham*, 2008 WL 1849167, at *14). In *Graham*, the court dismissed an RLUIPA claim on summary judgment because the correctional facility's prohibition on attending more than one weekly Nation of Islam meeting did not require plaintiff to "commit an act forbidden by his religion [or prevent him] from engaging in conduct mandated by his faith." 2008 WL 1849167, at *14 (internal quotation marks omitted).[14] However, because *Graham* was decided on summary judgment and did not involve the issue of public nudity, Defendants' argument is unavailing.

For the same reasons as discussed above, Plaintiff has pleaded that his religious exercise has been substantially burdened. Accordingly, Woodward has stated a claim for relief under RLUIPA.

**D. Qualified Immunity**

Defendants contend that they are shielded from Plaintiff's claims by the doctrine of qualified immunity. Defs. Mem. L. 7. Under this doctrine, "government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526

---

[14] Defendants similarly cite to *Livingston* to argue that showering in the presence of the homosexual inmate was not a substantial burden under RLUIPA. Because the plaintiff in *Livingston* did not bring a RLUIPA claim, and again because the court decided the issue on summary judgment, any reliance on *Livingston* here is unwarranted.

U.S. 603, 609, 119 S. Ct. 1692 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)). "A defendant will thus not be liable for damages 'if he did not violate clearly established law or if it was objectively reasonable for him to believe that he was not violating clearly established law.'" *Pugh*, 571 F. Supp. 2d at 510 (quoting *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004)). As the Second Circuit has noted, a right is clearly established if (1) it is defined with reasonable clarity; (2) the Supreme Court or the Second Circuit has recognized the right; and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful. *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (quoting *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)); *see also Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987) ("[O]ur cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). The Second Circuit has further established that "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *McCullough v. Wyandanch Union Free Sch.*, 187 F.3d 272, 278 (2d Cir. 1999). For qualified immunity to bar suit at the motion to dismiss stage, "[n]ot only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (internal quotation marks and citations omitted).

Defendants claim that they are entitled to qualified immunity because the First Amendment right at issue was not clearly established. Defs. Mem. L. 8. To the contrary, Plaintiff argues that Defendants "violated a clearly established law, . . . that strip frisk of [Muslim] men is constitutional so long as the search is reasonable and not abusive." Pl. Opp. Mem. L. 14. Construing Plaintiff's submissions liberally, the Court will examine whether Woodward, or any other practicing Muslim inmate, had a clearly established right not to shower in the presence of a female guard or a homosexual inmate.

The parties have not cited—and the Court has not found—any Supreme Court or Second Circuit precedent establishing such a right. In *Jean-Laurent*, the court considered a Muslim inmate's claim that his being subjected to strip searches in the presence of female guards at Downstate violated his First Amendment rights. 2013 WL 1129813, at *8. The court noted that "[t]he taboo in the Islamic faith concerning male nudity in the presence of women is well known," and stated that it would not "second guess Plaintiff's allegation that being forced to stand in his underwear similarly infringed upon his freedom of religion." *Id.* Nonetheless, the court granted the Downstate officials' motion to dismiss on qualified immunity grounds because "no case law from the United States Supreme Court or the Second Circuit Court of Appeals supports the theory that it violates a Muslim inmate's constitutional rights to be searched in his underwear in the presence of a female officer." *Id.* at *9.[15] Like in *Jean-Laurent*, because of the

---

[15] *Cf. Smith*, 2007 WL 274756, at *3 (dismissing complaint on summary judgment because a female correctional officer "could not have understood that it was unlawful to be present while a male officer searched [the plaintiff] with a metal detector while [he] was clothed in his undershorts, revealing his knees but not his genitals."); *Canedy v. Boardman*, 91 F.3d 30, 34 (7th Cir. 1996) (defendants entitled to qualified immunity on Muslim inmate's claim that strip searches in the presence of female guards violated his First Amendment rights because "it was not at all clear" that the plaintiff's "interest in observing Islam's nudity taboos" outweighed the prison's "very strong interest in having its guards observe prisoners at all times and in all situations, and [its other] interest in providing equal employment opportunity to women").

14

absence of a clearly established right here, the defendants are entitled to qualified immunity. Woodward's claims for damages are therefore DISMISSED.[16]

### E. Claims Against Deputy Commissioner Bellnier and Superintendent Perez

Even if Plaintiff's claims for damages against Deputy Commissioner Bellnier and Superintendent Perez were not barred by qualified immunity, Woodward has failed to show their personal involvement in the conduct at issue. Indeed, Plaintiff makes clear that he has sued Deputy Commissioner Bellnier because he "answer[ed] a complaint" that Woodward wrote to the Commissioner of the New York State Department of Correctional and Community Services "[i]n which [the Deputy Commissioner] refused to change the unconstitutional practices at Downstate . . . ." Compl. at 5-A. Plaintiff further claims that Deputy Commissioner Bellnier is liable because he failed to remedy the wrong by either allowing the inmates in the intake to use the shower curtains used in the general prison population or to shower in their underwear. Pl. Opp. Mem. L. 20. Superintendent Perez is named in the instant action merely because of her role as Lieutenant Doe and Officer Perez's supervisor. Compl. at 5-A.

In *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), the Second Circuit established that the personal involvement of a supervisory defendant may be shown by evidence that the defendant (1) participated directly in the alleged violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning about it; (4) was grossly negligent in supervising the officers involved; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon v.*

---

[16] *See Samuels v. Selsky*, No. 01 Civ. 8235 (AGS), 2002 WL 31040370, at *16 (S.D.N.Y. Sept. 12, 2002) ("As a preliminary matter, it should be noted that qualified immunity is only a defense to claims for money damages and [is] not a defense for equitable relief or injunctions.").

*Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  In *Iqbal*, the Supreme Court noted that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  556 U.S. at 676.  As the Second Circuit recently observed, the limitation on supervisory liability in *Iqbal* "has, of course, engendered conflict within our own Circuit about the continuing vitality of the supervisory liability test set forth in *Colon* . . . ."  *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012); *see also Aguilar v. Immigration & Customs Enforcement Div.*, 811 F. Supp. 2d 803, 814 (S.D.N.Y. 2011) ("The Court of Appeals has not yet definitively decided which of the *Colon* factors remains a basis for establishing supervisory liability in the wake of *Iqbal*, and no clear consensus has emerged among the district courts within the circuit.").  Regardless of the viability of the factors established in *Colon*, Plaintiff has failed to plead the level of personal involvement required to sustain a claim against Deputy Commissioner Bellnier or Superintendent Perez.

It is well-established that a supervisory defendant's receipt of a single letter identifying an alleged wrong is insufficient for liability under Section 1983.  *See, e.g.*, *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801 (SAS), 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009) ("The Supreme Court [in *Iqbal*] explicitly rejected the argument that . . . a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. . . . For example, [t]he allegation that plaintiff sent defendant[] letters complaining of prison conditions is not enough to allege personal involvement." (internal quotation marks and citations omitted)); *Higgins v. Artuz*, No. 94 Civ. 4810 (SAS), 1997 WL 466505, at *7 (S.D.N.Y. Aug. 14, 1997) (dismissing claims against the superintendent of correctional facility even where the plaintiff alleged that he had personally informed the defendant of certain misconduct because

"[the] pleadings fail to allege facts demonstrating that [the defendant] had any direct involvement, knowledge of, or responsibility for the alleged retaliation against plaintiff"); *Greenwaldt v. Coughlin*, No. 93 Civ. 6551 (LAP), 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations. . . . To the extent that [the plaintiff] relies upon his allegations that he sent letters to the defendants, his complaint must be dismissed."). Accordingly, even if qualified immunity did not apply, Woodward's claims for damages against Deputy Commissioner Bellnier could not be sustained.

Similarly, Supervisor Perez cannot be held liable "merely because [she was a] supervisor[] or occupied a high position." *Martino v. Westchester Cnty. Dep't of Corr.*, No. 06 Civ. 9900 (PKC), 2008 WL 144827, at *3 (S.D.N.Y. Jan. 15, 2008); *see also Balkum v. Sawyer*, No. 6:06-CV-1467, 2011 WL 5041206, at *4 (N.D.N.Y. Oct. 21, 2011) ("Where a defendant is a supervisory official, a mere linkage to the unlawful conduct through the prison chain of command . . . is insufficient to show his personal involvement in that unlawful conduct." (internal quotation marks and citation omitted)). Because the only allegation relating to Supervisor Perez is that she was a supervisor of certain other defendants, Woodward's claims against her are insufficient.

### F. Claims for Injunctive Relief

Finally, the Court must consider Plaintiff's request for injunctive relief. "Under Article III, section 2 of the Constitution, federal courts lack jurisdiction to decide questions that cannot affect the rights of litigants in the case before them." *Davis v. New York*, 316 F.3d 93, 99 (2d Cir. 2003). "Such situations arise when 'there is no reasonable expectation that the alleged

violation will recur, and interim relief of events have completely and irrevocably eradicated the effects of the alleged violation." *Bellezza v. Fischer*, No. 05 Civ. 98 (DLC), 2006 WL 3019760, at *5 (S.D.N.Y. Oct. 24, 2006) (quoting *Davis*, 316 F.3d at 99). "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin*, 467 F.3d at 272. Woodward is no longer incarcerated at Downstate Facility, and there is no allegation that he is currently under the supervision of Officer Perez, Lieutenant Doe, or Superintendent Perez. Accordingly, Plaintiffs' claim for injunctive relief cannot be sustained against those defendants. *Cf. Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam) ("Since Prins is no longer incarcerated at either Green Haven or Clinton, he cannot get injunctive relief."). The Court further finds Woodward's claim for injunctive relief against Deputy Commissioner Bellnier moot because Plaintiff has provided no indication that he will be, or has been, forced to shower naked in the presence of a female guard or homosexual inmate at Elmira Correctional Facility. The Court therefore concludes that there is no reasonable expectation that the alleged violations will recur. *Cf. Andino v. Fischer*, 698 F. Supp. 2d 362, 380 (S.D.N.Y. 2010) ("It appears that Madison's claims for such relief extended only so far as his denial of participation in the feed-in program at Woodbourne. As he has not indicated that he has applied for, or been denied participation in, such a program at Mid-State, any prospective relief claims should be dismissed."); *Kee v. Hasty*, No. 01 Civ. 2123 (KMW) (DF), 2004 WL 807071, at *8 (S.D.N.Y. Apr. 14, 2014) ("Since Kee is no longer being held at the MCC, there is 'no reasonable expectation' that alleged wrongful conduct directed toward him will be repeated. Therefore, to the extent that they request prospective relief, Kee's claims are moot, and I

recommend that they be dismissed on that ground.").[17] Defendants' motion to dismiss Plaintiff's claim for injunctive relief is therefore GRANTED.

### III. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 28, to mail a copy of this Opinion and Order to Plaintiff, and to close the case.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated:   August 29, 2014
         New York, New York

                                                    Edgardo Ramos, U.S.D.J.

---

[17] *See also Jones v. Fischer*, No. 9:11-cv-774 (GLS) (CFH), 2013 WL 4039377, at *6 (N.D.N.Y. Aug. 7, 2013) ("Jones was previously incarcerated at Marcy, Wallkill, and Shawangunk. Jones's transfer from these correctional facilities to George Motchan moots any claims for injunctive or declaratory relief. Therefore, there is no live controversy and the Court no longer has jurisdiction over these potential claims for relief.").